489 P.2d 181

**Isidore TAPIA, personal representative of Willie Gauna, Jr., Deceased, Plaintiff-Appellant,**

**v.**

**Blevins McKENZIE, Defendant-Appellee.**

**No. 588.**

Court of Appeals of New Mexico.

Aug. 6, 1971.

Rehearing Denied Sept. 7, 1971.

Eugene E. Klecan, James T. Roach, Albuquerque, for plaintiff-appellant.

Charles A. Pharris, Keleher & McLeod, Albuquerque, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

This car-cow collision case is concerned with summary judgment and res ipsa loquitur.

On the day of the accident cattle had been worked on the south side of the highway and 25 to 30 cows had been brought to the north side of the highway through an underpass. These cows had been put into a pasture north of and adjacent to the highway. The pasture was approximately 800 acres and 35 to 40 cows were in the pasture. One of the cows got onto the highway, but the record does not show when. After it was dark, Gauna, a motorist, collided with it. Gauna died from injuries received in the collision. His personal representative sued defendant for wrongful death. In this appeal, no claim is made that defendant was not the owner of the cow which got onto the highway.

The pasture from which the cow escaped was separated from the highway by a fence and a cattle guard. The briefs concede this to be an interstate highway. The fence and the cattle guard had been installed by a contractor for the State Highway Department and that department own-

ed and maintained the fence and cattle guard. Following the accident, it was determined that the portion of the fence inspected was in good repair and that the cattle guard was "top pole," "real good," "in repair and not in disrepair." The cow's "tracks crossed the cattle guard;" and she was trailed "up to where she got hit." " * * * A cattle guard would ordinarily hold anything, but it didn't this one."

On the basis of the foregoing, the trial court granted summary judgment; plaintiff appeals.

*Summary judgment.*

■ The basis of any liability on the part of defendant in this case is negligence. See Mitchell v. Ridgway, 77 N.M. 249, 421 P.2d 778 (1966); Grubb v. Wolfe, 75 N.M. 601, 408 P.2d 756 (1965); § 40A–8–10, N.M.S.A.1953 (Repl.Vol. 6, Supp.1969); § 64–18–62, N.M.S.A.1953 (Repl.Vol. 9, pt. 2, Supp.1969); compare § 22–20–1, N.M.S.A.1953.

■ Defendant, the movant for summary judgment, had the burden of establishing the absence of a material issue of fact and that he was entitled to summary judgment as a matter of law. Sanchez v. Shop Rite Foods, 82 N.M. 369, 482 P.2d 72 (Ct.App.1971). In this case, defendant had the burden of establishing an absence of a material issue of fact on the question of negligence.

Defendant did not meet this burden. The facts before the trial court make a prima facie showing as to the means by which the cow got out of the pasture. These facts, however, do not make a prima facie showing of no negligence (see N.M. U.J.I. 12.1) on the part of defendant because they show nothing as to action, inaction or foreseeability on the part of defendant in connection with the means of escape. Compare Martin v. Board of Education of City of Albuquerque, 79 N.M. 636, 447 P.2d 516 (1968).

■ The summary judgment was improperly granted because defendant did not make a prima facie showing that he was entitled to summary judgment. Sanchez v. Shop Rite Foods, supra; compare Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892 (Ct.App.1970).

*Res Ipsa Loquitur.*

Because of the emphasis placed on res ipsa loquitur, both in the trial court and in this appeal, and because the summary judgment was erroneous, we briefly discuss this doctrine.

■ It is plaintiff's contention that under this doctrine he may go to the jury in this case upon a showing that defendant's cow was on the highway; that the highway was fenced and that decedent's car collided with the cow. This is a misreading of Mitchell v. Ridgway, supra. In that case, the horse escaped from the defendant's corral; the highway was not fenced at this point. Our Supreme Court held the facts in *Mitchell* were sufficient to avoid a non-suit; that the trial court erred in dismissing the suit " * * * for failure to state a claim upon which relief could be granted. * * *" When the dismissal is for failure to state a claim upon which relief can be granted, the issue is whether the plaintiff would be entitled to recover under any state of facts provable under the claim that is made. Pattison v. Ford, 82 N.M. 605, 485 P.2d 361 (Ct.App.1971). No such question is involved in this case.

In holding a cause of action was stated, Mitchell v. Ridgway, supra, referred to res ipsa loquitur and indicated the doctrine *could* be applicable in car-cow collision cases. For it to be applicable:

" * * * The plaintiff must still fulfill the burden of satisfying the court, or the jury, that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence, and that the agency or instrumentality, in this case a domestic animal, was within the exclusive control of the defendant. * * *"

■ If plaintiff fails to establish the essential elements of the doctrine, it would

not be available to make a prima facie case of liability. Hisey v. Cashway Supermarkets, Inc., 77 N.M. 638, 426 P.2d 784 (1967).

■ Thus, under the New Mexico Supreme Court decisions, plaintiff would not be entitled to go to the jury in this case upon a showing that defendant's cow escaped through a Highway Department cattle guard and was upon the highway, causing the collision. To get to the jury, there must be evidence tending to establish the elements of res ipsa loquitur. Mitchell v. Ridgway, supra.

■ It would not be different in a summary judgment situation. If defendant makes a prima facie showing entitling him to summary judgment, plaintiff, to defeat summary judgment, must then show there is a factual issue. Rekart v. Safeway Stores, Inc., supra. Plaintiff could do this by showing there are facts tending to establish the elements of res ipsa loquitur. If there is no showing that a factual issue exists as to the elements of the doctrine, the doctrine would not be available to defeat the summary judgment. Thus, the facts on which plaintiff relies here would not defeat a summary judgment, once a prima facie showing supporting summary judgment is made by defendant, because these facts do not tend to establish the elements of res ipsa loquitur.

The summary judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

We disagree as to the meaning of summary judgment, the failure to explain applicable statutes, and the applicability of the doctrine of res ipsa loquitur. Therefore, I specially concur.

(a) *The Meaning of Summary Judgment*

McKenzie, the owner of a cow, was awarded summary judgment in an action for the wrongful death of Gauna, Jr., brought by Tapia under the doctrine of res ipsa loquitur. The deceased was driving an automobile in the nighttime in an easterly direction on Interstate Highway 40 (formerly Highway 66), when he collided with McKenzie's cow, between Clines Corners and Santa Rosa, New Mexico. Gauna is dead and silent. The only evidence is the deposition of McKenzie.

In order to sustain summary judgment under the doctrine, McKenzie had the burden of showing there was no genuine issue of material fact because, as a matter of law, (1) Gauna's death was not proximately caused by the cow while it was under the exclusive control and management of McKenzie; or (2) that the presence of the cow on the highway was not of a kind which ordinarily occurs in the absence of negligence on the part of McKenzie; or (3) McKenzie used ordinary care in his control and management of the cow. See; U.J.I. 12.14; Renfro v. J. D. Coggins Co., 71 N.M. 310, 378 P.2d 130 (1963). The burden rested on McKenzie, Ballard v. Markey, 66 N.M. 265, 346 P.2d 1045 (1959), and not on Tapia. Coca v. Arceo, 71 N.M. 186, 193, 376 P.2d 970 (1962).

McKenzie failed in his burden. This means there is a genuine issue of material fact as to each element of res ipsa loquitur.

Since there are genuine material issues of fact, they must be submitted to the jury. Zengerle v. Commonwealth Insurance Co. of New York, 60 N.M. 379, 291 P.2d 1099 (1955); Johnson v. Primm, 74 N.M. 597, 396 P.2d 426 (1964); Great Western Construction Co. v. N. C. Ribble Co., 77 N.M. 725, 427 P.2d 246 (1967). Tapia is entitled to present this case to the jury on the merits. Buffington v. Continental Casualty Company, 69 N.M. 365, 367 P.2d 539 (1961); Cortez v. Martinez, 79 N.M. 506, 445 P.2d 383 (1968). In other words, at the close of all the evidence in this case at the time of trial, McKenzie is not entitled to a directed ver-

dict because there are disputed issues of material fact.

The majority opinion holds only that McKenzie failed to establish the absence of negligence. But under the doctrine of res ipsa loquitur, Tapia would not be entitled to go to the jury unless he presents evidence tending to establish the elements of res ipsa loquitur. The reason I disagree is that if any elements of res ipsa loquitur are now absent, the majority has a duty to sustain the summary judgment. If McKenzie failed to establish the absence of negligence, can Tapia now add a claim based upon McKenzie's negligence?

The majority opinion fails to set forth all of the material facts. To do so, might aid the trial court. It should not direct a verdict for McKenzie. On remand, the trial court must necessarily look to the opinion, and not to the judgment of mandate, for the law of the case. All matters determined by the decision become the law of the case and are binding upon the courts and litigants. First National Bank of El Paso, Texas v. Cavin, 28 N.M. 468, 214 P. 325 (1923).

I have reviewed all of the New Mexico cases on summary judgment. It would be overly burdensome to review all of the principles. Decisions can be found on each side.

Summary judgment is a dangerous instrument in the administration of justice when it denies a party the right to trial based upon factual issues. The obvious purpose of the rule from its origin in New Mexico in 1949, was to hasten the administration of justice and to expedite litigation by avoiding needless trials. Agnew v. Libby, 53 N.M. 56, 201 P.2d 775 (1949). This has not proven true in actual experience.

The history of Rule 56(c) in New Mexico indicates that summary judgment does not hasten the administration of justice; that trial courts decide issues and grant summary judgments which, they believe, avoids a large trial docket. In the vast majority of summary judgments appealed,

reversals occurred, and trial denied was trial delayed. It is the policy of courts of review to grant the right of trial whenever justice demands it. Trial courts must find a legal rather than a factual issue upon which to grant summary judgment. For example, in Electric Supply Co. v. United States Fidelity & Guaranty Co., 79 N.M. 722, 449 P.2d 324 (1969), the court said: "Here, there is only a question of law as to whether there was an accord and satisfaction." In Southern Union Gas Co. v. Briner Rust Proofing Co., 65 N.M. 32, 331 P.2d 531 (1958), the court said:

Whether, indeed, under the circumstances of a given case, a duty exists is a pure question of law for determination by the court.

It has been stated in some negligence cases that, ordinarily, negligence is a question for the jury, but when *reasonable minds* cannot differ as to the facts and inferences to be drawn therefrom, the question is one of law. Stake v. Woman's Division of Christian Service, 73 N.M. 303, 306, 387 P.2d 871 (1963). This is a questionable doctrine to follow. "Reasonable minds" is an indefinite phrase. In this accident age, how can we determine what a reasonable mind is? In jury trials, reasonable minds are a cross-section of a community called for jury service. Each trial judge believes he has a reasonable mind, and knows what reasonable minds are, but he cannot know whether reasonable minds will differ. Where an issue of negligence is involved, ordinarily the trial court should allow a jury to determine whether "reasonable minds" can differ.

(b) *Applicable Statutes*

The statutes covering animals and livestock on highways need discussion.

Section 40A-8-10, N.M.S.A.1953 (Repl. Vol. 6, Supp. 1969), was originally adopted in the Criminal Code of 1936, N.M. Laws 1963, ch. 303, §§ 8-10. It was rewritten in N.M. Laws 1966, ch. 44, § 1, and amended by Laws of 1967, ch. 180, § 1, and called "An Act Relating to Animals." We quote only § A, because § B relates to

"*State* Public Fenced Highways," § C to highways within the jurisdiction of county commissioners, and § D to "unfenced roads or highways." Section E provides that "Whoever commits unlawfully permitting livestock upon public highways is guilty of a petty misdemeanor." Section A reads as follows:

A. Unlawfully permitting livestock upon public highways consists of any owner or custodian of livestock *negligently* permitting his livestock to run at large upon any part of a public highway which is fenced on both sides. [Emphasis added.]

The other statute, entitled "Animals on Highway," which was adopted under motor vehicle traffic laws is § 64–18–62, N.M. S.A.1953 (Repl.Vol. 9, pt. 2, Supp.1969), adopted in 1966. The pertinent parts are the following:

B. It is unlawful for any person *negligently* to permit livestock to wander or graze upon any *fenced* highway at any time or, during the hours of darkness, to drive livestock along or upon any highway which is normally used by motor vehicles.

C. Owners of livestock ranging in pastures through which *unfenced* roads or highways pass shall not be liable for damages * * * unless such owner of livestock is guilty of *specific negligence* other than allowing his animals to range in said pasture. [Emphasis added.]

As originally adopted in 1953, the word "negligently" in § B was omitted. It was inserted by a 1965 amendment. This means that the legislature did not intend strict liability or liability without fault, but it intended a cow owner to be liable if he failed to exercise ordinary care in permitting the cow to wander or graze upon any fenced highway. See Johnson v. Hickel, 28 N.M. 349, 212 P. 338 (1923), where the word "negligent" does not appear in the statute; Prickett v. Farrell, 248 Ark. 996, 455 S.W.2d 74 (1970), where res ipsa loquitur is not followed, and Scanlan v. Smith, 66 Wash.2d 601, 404 P.2d 776 (1965),

where an inference of negligence is allowed. It is also clear in the above statute that "specific negligence" applies to unfenced roads and not fenced highways. Tapia did not have the duty of proving specific acts of negligence.

Inasmuch as both statutes now provide for negligence in permitting livestock to run at large or wander or graze upon a fenced highway, they can both be read together. See Steed v. Roundy, 342 F.2d 159 (10th Cir. 1965), which interpreted the statutes before amendment.

I am unable to discover the legislative intent for adopting both statutes. However, the two statutes set forth above readily disclose that the purpose of each is to protect the public. Mitchell v. Ridgway, 77 N.M. 249, 421 P.2d 778 (1966). For this reason, we must construe the facts and the statutes to carry out the legislative intent. The term "livestock" is of plural origin, but it has been held that one horse upon a fenced highway falls within the statute. Mitchell v. Ridgway, supra, or one bull, Carrasco v. Calley, 79 N.M. 432, 444 P.2d 617 (1968), or one calf, Grubb v. Wolfe, 75 N.M. 601, 408 P.2d 756 (1965).

Inasmuch as the majority opinion does not advise the trial court of the applicability of these statutes, error may occur in a trial on the merits. Can Tapia now add a claim based upon McKenzie's negligence arising out of these statutes?

(c) *Res Ipsa Loquitur*

Res ipsa loquitur is a quagmire of judicial discussion. For a simple analysis, see Restatement of the Law, Torts, Second, § 328D and comment. Here, the authors comment that defendant's superior knowledge, or access to it, has been a very persuasive factor in the development of the principle and "normally, therefore, a verdict cannot be directed for defendant in a res. ipsa loquitur case, solely upon the basis of defendant's evidence of his own due care."

In New Mexico, its first discussion arose in Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 528, 25 P.2d 197 (1933). The court recognized the doctrine as a rule of necessity based on the principle that under the common experience of mankind an accident of the particular kind does not happen except through negligence. Its chief justification is the superior knowledge of the defendant.

Res ipsa loquitur does not apply on summary judgment in medical malpractice cases. Cervantes v. Forbis, 73 N.M. 445, 389 P.2d 210 (1964), and Buchanan v. Downing, 74 N.M. 423, 394 P.2d 269 (1964), because of the need for expert medical testimony.

Every negligence case in New Mexico discloses that the doctrine of res ipsa loquitur is accepted or denied by the fact finder after all the testimony has been heard by the court or the jury. Chapin v. Rogers, 80 N.M. 684, 459 P.2d 846 (1969); Williamson v. Piggly-Wiggly Shop Rite Foods, Inc., 80 N.M. 591, 458 P.2d 843 (1969); Hisey v. Cashway Supermarkets, Inc., 77 N.M. 638, 426 P.2d 784 (1967); Gray v. E. J. Longyear Co., 78 N.M. 161, 429 P.2d 359 (1967); Pack v. Read, 77 N.M. 76, 419 P.2d 453 (1966); Renfro v. J. D. Coggins Co., 71 N.M. 310, 378 P.2d 130 (1963); D A & S Oil Well Servicing v. McDonald Oil Corp., 70 N.M. 396, 374 P.2d 146 (1962); McFall v. Shelley, 70 N.M. 390, 374 P.2d 141 (1962); Tuso v. Markey, 61 N.M. 77, 294 P.2d 1102 (1956); Tafoya v. Las Cruces Coca-Cola Bottling Co., 59 N.M. 43, 278 P.2d 575 (1955); Zanolini v. Ferguson-Steere Motor Co., 58 N.M. 96, 265 P.2d 983 (1954).

We have adopted Dean Prosser's Statement that in ordinary cases, res ipsa loquitur "avoids a non-suit and gets the plaintiff to the jury." Pack v. Read, 77 N.M. 76, 419 P.2d 453 (1966), and Tuso v. Markey, 61 N.M. 77, 294 P.2d 1102 (1956).

Under the doctrine of res ipsa loquitur, by denying summary judgment, I hold that McKenzie's evidence "does not ordinarily destroy the inference or presumption of negligence raised by plaintiff's proof or authorize the jury to disregard it or authorize a finding of the absence of negligence as a matter of law or warrant an affirmative direction for defendant. The rule is that, when all the evidence is in, the question whether defendant has rebutted the inference * * * is for the jury, and the case must be submitted to the jury to determine where the preponderance of evidence lies, for the weight of the explanation, like the weight of the inference, is for the determination of the jury." 65A C.J.S. Negligence § 220.20.

The majority opinion relies on Mitchell v. Ridgway, 77 N.M. 249, 421 P.2d 778 (1966).

First, I must explain an error which exists at times in cases involving res ipsa loquitur. In *Mitchell*, the court said:

We are aware of the division of opinion that exists in other jurisdictions on the question of the applicability of res ipsa loquitur. The two views are well expressed in Wilson v. Rule, 169 Kan. 296, 219 P.2d 690 and Rice v. Turner, 191 Va. 601, 62 S.E.2d 24, where there was a refusal to apply the rule and in Scanlan v. Smith, 66 Wash.2d 601, 404 P.2d 776 the opposite result was reached. Although Scanlan v. Smith, supra, claims to represent the majority view the numerical difference is very close and the presence of statutes in some states weakens the claim. [77 N.M. at 252, 421 P.2d at 781.]

Res ipsa loquitur was not an issue in *Scanlan*. That court held "the presence of the defendant's livestock on the highway was sufficient to raise a permissible inference of negligence which would take the plaintiff's case to the jury. * * *" The difference between a permissible inference of negligence and the doctrine of res ipsa loquitur is adequately explained in Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197 (1933).

The doctrine of permissible inference is not an issue, and I express no opinion upon its applicability in this case.

Frumer-Friedman, Personal Injury, Vol. 1, Animals, § 1.02, p. 274.2, Note 28, and supplement, points out that five jurisdictions, including New Mexico, favor res ipsa loquitur, and three jurisdictions are contrary. I do not know whether this analysis is accurate. In any event, Mitchell v. Ridgway, supra, declares the doctrine to exist in New Mexico. We are bound by this doctrine.

Second, the majority opinion misapplies Mitchell v. Ridgway, supra. Summary judgment was not an issue. The trial court granted a motion to dismiss plaintiff's complaint because it failed to state a cause of action. Since the complaint stated a cause of action, the court announced that plaintiff must establish the elements of the doctrine of res ipsa loquitur. A summary judgment amounts to more than the motion to dismiss. Pederson v. Lothman, 63 N.M. 364, 320 P.2d 378 (1958). In the instant case, this burden has been met by reversing summary judgment in favor of McKenzie.

McKenzie relies on Leet v. Union Pacific R. Co., 25 Cal.2d 605, 155 P.2d 42 (1944). But the court said that instances in which inferences are dispelled in res ipsa are rare. McKenzie quotes the following from Atchison, T. & S. F. Ry. Co. v. Simmons, 153 F.2d 206 (10th Cir. 1946), a New Mexico case, and relies on the emphasis added.

" 'It creates an inference of fact. It casts on the opposite party the duty of going forward with evidence or risking that the jury will infer negligence from the occurrence. It will take the case to the jury *unless the entire evidence is such that the presumption cannot stand against it.* It is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption because it is for the jury to pass upon the credibility of the witnesses and the truth of the testimony. To justify a directed verdict the evidence must be so conclusive that minds of reasonable men could not differ as to the conclusions to be drawn therefrom.' (emphasis added)."

This language strongly supports Tapia's position that res ipsa is a factual question which makes a directed verdict a very difficult peak to climb.

Defendant contends that the evidence presented makes the doctrine inapplicable because it established how the cow got on the highway. Even if true, this does not destroy the inference because there is no explanation by McKenzie of any care used to restrain the freedom of this cow before it reached the cattle guard.

Let us proceed with the application of the doctrine of res ipsa loquitur to determine if an issue of fact is present.

*Was the cow under the Exclusive Management and Control of McKenzie?*

McKenzie contends he did not have exclusive control and management of the cow because the State of New Mexico, as well as himself, had control; that there is nothing more than surmise and speculation to connect McKenzie's exercise of control with the subsequent harm. He relies on Renfro v. J. D. Coggins Co., 71 N.M. 310, 378 P.2d 130 (1963). This case was tried to a court and all evidence was presented and findings made. It did not determine the meaning of "exclusive control." The Supreme Court held that control is not necessarily control exercised at the time of injury, but may be control exercised at the time of a negligent act which subsequently results in injury.

The State of New Mexico had no control over the cow before or at the time of the death on the highway. It had no control over the original escape of the cow. It had no duty to keep employees in this area to restrain the freedom of the cow or to exercise due care to avoid permitting the cow to cross a cattle guard or to wander or run at large upon the highway. This was a statutory duty of McKenzie alone. See Whitt v. Jarnagin, 91 Idaho

**124**

181, 418 P.2d 278 (1966); where a railroad had control of a cattle guard.

The cow was the causative factor in the death of Gauna, and an issue of fact exists whether it was under the exclusive control and management of McKenzie. "Exclusive control" does not mean actual, physical control at the time of the accident. Pollard v. Todd, 148 Mont. 171, 418 P.2d 869, 872 (1966). It does not have a narrow meaning. The test is one of the right of control rather than actual control. Ragusano v. Civic Center Hospital Foundation, 199 Cal.App.2d 586, 19 Cal.Rptr. 118 (1962); Parlow v. Carson-Union-May-Stern Co., 310 S.W.2d 877, 881 (Mo.1958).

McKenzie desires to file a third party complaint against the New Mexico State Highway Department. If this occurs, and, at the time of trial, there is evidence produced that the State Highway Department shared in the control, the doctrine of "exclusive control" can apply to both. Marzotto v. Gay Garment Co., 11 N.J.Super. 368, 78 A.2d 394 (1951); 65A C.J.S. Negligence § 220.15d. Prosser on Torts, ch. 7, § 43 (1941), states:

> The inference of negligence may arise against each of two or more parties who share control—as where each is under an obligation to inspect, and the defect is one which could have been discovered by such inspection.

For purposes of summary judgment, there is sufficient evidence to establish that an issue exists whether McKenzie had exclusive control of the cow when it found a way to escape the fenced area and meandered on the highway. Gauna's death was proximately caused by the cow being on the highway.

*Was this the kind of Accident that Ordinarily does not occur in the Absence of Negligence?*

The second important segment of res ipsa loquitur is whether the cow accident ordinarily does not occur in the absence of McKenzie's negligence. How can we tell? We do have certain guides to follow: (1) to rely on the common experi-

ence of mankind; (2) the cause of the cow being on the highway which is accessible to McKenzie and inaccessible to Tapia; (3) the duty of McKenzie to exercise reasonable care to prevent livestock from wandering on a fenced public highway; (4) the duty of McKenzie to protect the motoring public; (5) the absence of an explanation by McKenzie that the accident arose from want of care; (6) the animal Acts which are designed primarily to reduce collisions between motor vehicles and animals on fenced public highways.

Grubb v. Wolfe, 75 N.M. 601, 408 P.2d 756 (1965), lighted the way on the duties of a cow owner by pointing out that "Time and progress have forged the change." The reasons are clearly set forth. The facts and statutes are pre-1966, but the court said:

> The foregoing authorities establish that the owner of livestock has a duty to care for his property as a reasonable man, and that he may be liable for injuries to motorists resulting from collisions with his animals due to his negligence in permitting them to be on the highway.

This decision was followed in Mitchell v. Ridgway, supra, where the doctrine of res ipsa was adopted, and distinguished in Carrasco v. Calley, supra, where a district court found no evidence of negligence of a bull owner under an unfenced highway act.

In Mitchell v. Ridgway, supra, the court said:

> Modern highways and vehicular traffic in New Mexico with livestock permitted to roam presents an intolerable situation.

I believe the facts in this case, the statutes in effect, and the decisions mentioned above show that an inference of negligence arises and the cow accident would not have occurred if McKenzie had exercised due care. See also Whitt v. Jarnagin, supra.

Defendant relies on Steed v. Roundy, supra. This is a New Mexico case involv-

ing an automobile-horse accident in Valencia County. The case was tried by the court, and findings made that the defendant was not negligent. This was affirmed. In interpreting an earlier animal act with "negligent" permission to allow livestock to run at large, the court said:

The later statute specifically requires proof of negligence on the part of the owner of livestock running at large on the public highways before liability would attach.

This case was decided March 1, 1965, before Mitchell v. Ridgway, supra, decided December 10, 1966. Mitchell v. Ridgway, supra, adopted res ipsa loquitur under the same statute without mentioning the federal case. I find no further citations of the *Steed* case. We confirm Mitchell v. Ridgway, supra.

Defendant also relies on Wilson v. Rule, 169 Kan. 296, 219 P.2d 690, and Rice v. Turner, 191 Va. 601, 62 S.E.2d 24, cited in Mitchell v. Ridgway, supra. These views were not followed.

The defendant relies on Hughes v. W & S Construction Co., 196 So.2d 339 (Miss. 1967). This was a jury trial in which res ipsa was not involved, but, by way of dicta, the court held that if it were involved, the defendant fully sustained his burden of proving lack of negligence. It relied on its earlier decision of Pongetti v. Spraggins, 215 Miss. 397, 61 So.2d 158, 34 A.L.R.2d 1277 (1952). These cases do not support summary judgment, but support a peremptory instruction after all the evidence is in and defendant's testimony is clear and undisputed that he exercised reasonable care to restrain the freedom of his calf.

McKenzie has not yet disclosed what care, if any he exercised to restrain the cow from leaving the fenced area.

McKenzie closes his argument with a strong appeal that res ipsa loquitur creates an intolerable and unjust burden on livestock owners and makes them insurers of the public safety. This is not true. All of his alleged defenses are preserved. The legislature made negligence of the livestock owner a misdemeanor in order to protect the motorist. This is the public speaking. At nighttime, on vast, divided, fenced, interstate highways, livestock owners must recognize the danger to motorists created by the presence of a cow on the highway. They have a duty to protect human life more than the duty they have to protect the life of one cow. They must restrain the freedom of the cow, not to preserve its life, but to preserve human life. They must not play with human life by saying, "not only could the cow not have gotten through that fence, it did not. Nothing came through that fence. A cattle guard would ordinarily hold anything, but it didn't this one." It sounds like the cow flew over the moon and took Gauna's life.

The doctrine of res ipsa loquitur is a rule of common sense, and common sense permits an inference from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. Witort v. United States Rubber Co., 3 Conn.Cir. 690, 223 A.2d 323 (1966).

By this special concurring opinion, I do not hold that Tapia is entitled to a victory. I only hold that Tapia is entitled to a trial before a jury requested by McKenzie.